**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**MARK T. BAKER,** as personal
representative of the ESTATE OF VERNON
FREDERICK GARDNER, deceased,

Plaintiff,

v. Case No. 1:23-cv-953-WJ-JFR

**THE UNITED STATES OF AMERICA,**

Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING THE UNITED STATES' PARTIAL MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

**THIS MATTER** comes before the Court upon the United States' Partial Motion to Dismiss for Lack of Subject Matter Jurisdiction, Fed. R. Civ. P. 12(b)(1), Filed in Lieu of an Answer ("the Motion") **[Doc. 14]** and Plaintiff's Renewed Motion to Amend the Complaint **[Doc. 36]**. This case arises out of a vehicle accident in which a Department of Veteran's Affairs (VA) employee struck United States Air Force veteran Major Vernon Federick Gardner as he was leaving the Raymond G. Murphy Department of Veterans Affairs Medical Center in Albuquerque ("VA Hospital").

Plaintiff, the personal representative of Major Gardner's estate, sues the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680, asserting claims for vicarious liability and negligence per se. **Compl., Doc. 1, Counts I and II.** The Complaint also alleges the United States is directly liable for the negligent design and maintenance of the VA parking lot **(Count III)** and negligent hiring, training, entrustment, and supervision of the employee driver **(Count IV)**. The United States moves under Rules 12(b)(1) and 12(b)(6) to dismiss Counts III and IV of the Complaint, arguing that the discretionary function exception

precludes jurisdiction. Plaintiff timely exhausted his administrative remedies, 28 U.S.C. § 2675, and the Motion is ripe for decision.

**FACTUAL BACKGROUND**

The following facts are drawn from the allegations in the Complaint. On May 31, 2022, Major Gardner was walking out of the VA Hospital via a crosswalk[1] in the VA Hospital parking lot when a VA employee believed to be Michael Collins driving a VA transport van ran a stop sign, struck and ran over him. Evidence submitted by Plaintiff is alleged to show that a large commercial truck was parked in front of the entrance to the VA Hospital, obstructing the view from the crosswalk. **Docs. 19 at 2; 19-1**.

Major Gardner suffered numerous serious injuries from the impact of being hit, falling on the ground and being run over, including spinal fractures and brain hemorrhages. **Compl. ¶ 57**. VA employees arrived at the scene and took Major Gardner into the VA hospital. After a time period Plaintiff alleges was unreasonably long, the VA Hospital concluded it could not adequately care for him, and Major Gardner was transferred to the trauma center at the University of New Mexico Hospital (UNM Hospital). The doctors at UNM Hospital successfully kept Major Gardner alive for about a day but concluded he would not continue to survive without machine assistance. Consistent with their understanding of his wishes and the advice of doctors that nothing further could be done to improve his prognosis, Major Gardner's sons ultimately made the decision to discontinue life support. Major Gardner died as a result of his serious injuries and the VA's negligence in providing and procuring medical treatment.

[1] In the Response to the Partial Motion to Dismiss in Lieu of Answer, **Doc. 19**, Plaintiff later asserts that Major Gardner was killed in the loading zone. **Doc. 19 at 8**. That assertion clearly contradicts Plaintiff's own exhibit (**Doc. 19-1**), which shows Major Gardner in the crosswalk and Plaintiff's Response that also places Major Gardner in the crosswalk when he was run over. **Doc. 19 at 10; *see also* Compl. ¶ 49**. The disputed loading zone is located in front of the crosswalk and is not a passenger loading zone. **Compl. ¶¶ 51, 86; Doc. 19 at 8-10; Doc. 21 at 4.** In any event, the accident's location is a factual issue that does not affect the legal questions for resolution here.

## PROCEDURAL HISTORY

After this case ("*Gardner I*") was initiated on October 30, 2023, Plaintiff filed a second case in state court ("*Gardner II*") based on the same underlying facts. The United States removed that case to this Court, substituted the United States as the defendant in place of the van driver, and moved to dismiss based on sovereign immunity. *Baker, as Personal Representative of the Wrongful Death Estate of V. Frederick Gardener, deceased v. United States*, No. 1:25-cv-00566-WJ-JFR ("*Gardner II*"). The United States certified, pursuant to 28 U.S.C. § 2679(d), that Mr. Collins was acting within the course and scope of his employment at the time of the alleged events. ***See* Doc. 4, 25-cv-566, at ¶ 3**. On July 9, 2025, the Court granted Plaintiff's unopposed request to consolidate this action with *Gardner II*. The undersigned Judge held a status conference/motion hearing with counsel on March 31, 2026. Counsel for Plaintiff stated that Plaintiff had not moved to dismiss the later-filed *Gardner II* because the United States had not filed in that case a stipulation that Mr. Collins was acting within the course and scope of his employment during the alleged events. Notwithstanding that objection, Plaintiff subsequently on April 29, 2026, voluntarily dismissed *Gardner II* (Case No. 25-cv-566) without prejudice. **[Doc. 22]**.

## STANDARD OF DESCISION UNDER RULES 12(B)(1) AND 12(B)(6)

Rule 12(b)(1) contemplates two sorts of jurisdictional attacks: facial and factual. A factual motion under Rule 12(b)(1) challenges the existence of subject-matter jurisdiction in fact, irrespective of the pleadings. *Chatham Condo. Ass'ns. v. Cent. Village, Inc.*, 597 F.2d 1002, 1012 (5th Cir. 1979). By comparison, in examining a facial challenge, the Court presumes the complaint's factual allegations are true. *See Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995). Because the United States moves to dismiss the Complaint under Rules 12(b)(1) and 12(b)(6), the Court construes the challenge as a facial challenge to jurisdiction.

In the context of a facial motion to dismiss under Rule 12(b)(1), the Court determines whether the Complaint's well-pled factual allegations plausibly establish the Court's jurisdiction. *See Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015) (explaining that "the *Twombly-Iqbal* facial plausibility requirement for pleading a claim is incorporated into the standard for pleading subject matter jurisdiction."). The burden of establishing subject matter jurisdiction rests with the Plaintiff. *See Driskell v. Thompson*, 971 F. Supp. 2d 1050 (D. Colo. 2013) (quoting *F & S Constr. Co. v. Jensen*, 227 F.2d 160, 161 (10th Cir. 1964)).

**DISCUSSION**

**I. The Discretionary Function Exception to FTCA Liability**

The FTCA acts as a limited waiver of the federal government's sovereign immunity, vesting jurisdiction in the federal district courts for civil tort actions against the United States. 28 U.S.C. § 1346(b); *Est. of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852 (10th Cir. 2005). When a federal employee acts within the course and scope of their employment, the FTCA allows the United States to be held liable in tort in the same manner and to the same extent as a private individual under similar circumstances. § 1346(b)(1); *United States v. Orleans*, 425 U.S. 807, 813 (1976). The FTCA restores immunity, however, for certain categories of claims. As relevant here, 28 U.S.C. § 2680 precludes suit "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty." This exception is commonly known as the discretionary function exception. *See, e.g.*, *United States v. Gaubert*, 499 U.S. 315, 322 (1991).

The Supreme Court has developed a two-part test to determine whether challenged conduct falls within the discretionary function exception to the FTCA's waiver of sovereign immunity. At step one, the court determines whether the act or omission was "a matter of choice for the acting

employee." *Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 536 (1988). The exception does not apply "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id.* If, on the other hand, the action involves "an element of judgment," the exception "typically applies." *Knezovich v. United States*, 82 F.4th 931, 937 (10th Cir. 2023). Likewise, where a range of permissible courses is available, the action generally involves discretion. *See Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1131 (10th Cir. 1999).

"[E]ven if the challenged conduct was discretionary, jurisdiction can still be established at step two." *Knezovich*, 82 F.4th at 937. At this step, the Court "determine[s] whether th[e] judgment is the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536. This inquiry is intended to preserve the purpose of the exception — to protect federal employees' "exercise of judgment based on considerations of public policy." *Garcia v. U.S. Air Force*, 533 F.3d 1170, 1176 (10th Cir. 2008); *see also Berkovitz*, 486 U.S. at 536–37 ("The basis for the discretionary function exception was Congress' desire to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.") (quotation marks and citation omitted).

"If both elements are met," — that is, the conduct involves discretion and is susceptible to policy analysis — "the governmental conduct is protected as a discretionary function, and sovereign immunity bars a claim that involves such conduct." *Garling v. U.S. Env't'l Protection Agency*, 849 F.3d 1289, 1295 (10th Cir. 2017) (citing *Berkovitz*, 486 U.S. at 536). As the party asserting jurisdiction, Plaintiff has the burden to show that the discretionary function exception does not apply. *Hardscrabble Ranch, L.L.C. v. United States*, 840 F.3d 1216, 1220 (10th Cir. 2016); *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).

## II. The United States' Motion to Dismiss Counts III and IV

Plaintiff claims that the United States was negligent in its design of the VA Hospital parking lot and created a hazardous condition for pedestrians by allowing the crosswalk to abut high traffic areas and spaces where vehicles were allowed to park. **Compl. ¶¶ 84–86.** Plaintiff also alleges that the United States was negligent in hiring, training, entrusting and supervising Mr. Collins, the VA employee believed to have driven the vehicle that struck Major Gardner. ***Id.*** **¶¶ 89–92.**

The United States argues that Plaintiff's claims fall within the discretionary function exception. In its Motion, it draws on Tenth Circuit precedent holding that employment and termination decisions are ordinarily matters left to the agency's discretion and contends that Plaintiff fails to set forth specific and mandatory constraints on the VA's design and maintenance of its parking lot. **Doc. 14**. **at 6–15**.

Plaintiff maintains that the United States' duties to carefully design its facilities and hire, train, supervise and entrust employees are informed by mandatory policies, including the VA Parking Design Manual & Demand Model (PD Manual),[2] VA Directive 0637,[3] and federal regulation. Because in his view the precise conduct underlying these claims is governed by specific, mandatory policies, Plaintiff contends the conduct evades the discretionary function exception. The Court addresses each claim in turn.

**A. Negligent Parking Lot Design and Maintenance (Count III)**

Plaintiff alleges that the VA is required to ensure that its hospitals and their premises are safe for patients. **Compl. ¶ 83**. The Complaint alleges the United States negligently positioned the crosswalk amid converging traffic patterns and directly in front of an area where vehicles were

---

[2] U.S. Dep't of Veterans Affairs, VA Parking Design Manual & Demand Model (Apr. 2013), https://www.cfm.va.gov/til/dManual/dmParking.pdf, https://perma.cc/4CWZ-3EBU.

[3] For purposes of the instant Motion, the Court refers to the version of VA Directive 0637 accessible at docslib.org. U.S. Dep't of Veterans Affairs, VA Directive 0636 (Dec. 2, 2020), https://docslib.org/doc/2020067/department-of-veterans-affairs-va-directive-0637-washington-dc-20420-transmittal-sheet-december-2-2020 https://perma.cc/UQU2-5LLP.

allowed to park. In designing and maintaining the parking lot outside the VA Hospital, Plaintiff alleges the United States was required to "ensure that loading zones are located away from other traffic patterns and under a canopy or roof overhang for protection" and not to "plac[e] a loading zone in a hazardous area that created a bottleneck in front of the crosswalk, forcing eastbound vehicles to funnel into the westbound lane to get around the vehicles parked in the loading zone" or "allow[] vehicles to obstruct viewpoints of those utilizing the crosswalk." ***Id.*** **¶¶ 84, 85, 86c, d**. Last, the Complaint alleges that the VA violated its duty to implement adequate signage; to conduct "adequate studies to assess the safety of the parking lot and the traffic flow"; to "design[] pedestrian walkways to 'safely separate pedestrians form [sic] vehicular traffic'"; and to "hav[e], enforce[e], or follow[] an established maintenance plan for the parking lot, to include the safety of the pedestrians." ***Id.*** **¶¶ 86c-h.**

Plaintiff argues that the PD Manual and federal regulation provide specific, mandatory standards governing the design and maintenance of the parking lot. Plaintiff asserts that the PD Manual and federal regulation required that the agency locate its loading zones away from other traffic patterns and police its parking area so as to enforce agency regulation prohibiting vehicles from "blocking [] entrances, driveways, walks, loading platforms, or fire hydrants" as well as from "parking in unauthorized locations[.]." **Doc. 19 at 11** (citing 38 C.F.R. § 1.218 (12) and 41 C.F.R. § Pt. 102-74). Plaintiff asserts that on the day of the instant events, the VA violated these mandatory policies by allowing the commercial truck to park in front of the crosswalk and in the loading zone outside of the VA Hospital entrance, thus impeding the flow of its "main traffic pattern." **Doc. 19 at 3**. Plaintiff further asserts that the VA is bound by federal regulation requiring that "agencies regulate and police their own parking facilities." ***Id.*** **at 10–11** (citing 41 C.F.R. § 102-74.265).

At the outset, it is evident that the PD Manual was intended to serve as a guidance document, not as a source of mandatory design standards governing the planning, design, or maintenance of parking facilities. The introduction to the manual provides: "The goal of this document is to guide VA planners, managers, and designers in the planning, design and management of parking provisions within VHA." PD Manual at 81 (§ 1-1, Introduction). The introduction also describes that the manual's purpose is "to assist the [VA] in the development of quality parking operations" and to "prove useful in the procurement, design, operation, and maintenance of parking systems." *Id*. Under Tenth Circuit precedent, for a design or agency manual to eliminate an agency's discretion, the agency must generally "intend the manual to be mandatory" rather than "a guidance or advisory document." *Aragon v. United States*, 146 F.3d 819, 824 (10th Cir. 1998) (Air Force Manual's statement that it was "intended for guidance" and "principles rather than practices are emphasized . . . . weigh[ed] heavily against ruling the Manual prescribed mandatory directives for the Air Force to follow."). Based on this stated purpose, it is clear that the PD Manual is intended to provide recommendations, not to set forth mandatory criteria the agency must follow.

Turning to the specific provisions cited by Plaintiff, Plaintiff contends that the PD Manual mandates that accessible passenger loading zones be located away from "traffic patterns" and beneath a "canopy or roof overhang for protection." **Compl. ¶ 84** (citing PD Manual at 86 (§ 4-6)). Under a bullet point labeled "Passenger Loading Zone," the manual states, "Provide a designated accessible passenger loading zone located away from other traffic patterns." PD Manual at 98. Plaintiff also alleges that the PD Manual prohibits placing a crosswalk directly in front of an area where vehicles may park. **Compl. ¶ 86a.** But the crosswalk where Major Gardner was struck is not alleged to be a passenger loading zone, and Plaintiff does not identify a specific

provision of the PD Manual mandating that crosswalks be placed in a particular location. Further, whether or not in isolation the cited provisions imply imperative conditions, the Manual's intent to establish advisory guidance undermines their mandatory force.

Plaintiff's cited federal regulations similarly fail to prescribe a mandatory course of action relevant to the instant allegations. 38 C.F.R. § 1.218(12) is contained within a section titled "Security and law enforcement at VA facilities" and provides:

> Drivers of all vehicles in or on property shall drive in a careful and safe manner at all times and shall comply with the signals and directions of police and all posted traffic signs. The blocking of entrances, driveways, walks, loading platforms, or fire hydrants in or on property is prohibited; parking in unauthorized locations or in locations reserved for other persons or contrary to the direction of posted signs is prohibited. Creating excessive noise on hospital or cemetery premises by muffler cut out, the excessive use of a horn, or other means is prohibited. Operation of a vehicle in a reckless or unsafe manner, drag racing, bumping, overriding curbs, or leaving the roadway is prohibited.

38 C.F.R. § 1.218(12). The text, thus, makes clear that this regulation relates to driving and not to the design and maintenance of parking facilities. Therefore, this regulation cannot carry binding force in the context of the VA's design and maintenance of its parking lots. Plaintiff's citation to 41 C.F.R. Pt. 102-74 similarly does not compel a finding in his favor on *Berkovitz* step one. Part 102-74 concerns the management of government-owned buildings. Although it pertains to arguably relevant subject matter, Plaintiff fails to identify which, if any, provisions prescribe specific, mandatory and applicable directives governing the conduct alleged here.

As for the other alleged violations, the pleadings fail to identify underlying mandatory policy language. For example, the Complaint alleges that the VA had a non-discretionary duty to ensure appropriate signage was in place and to have and enforce an established maintenance plan for the parking lot. Without identifying specific, mandatory policy language supporting these

alleged requirements, Plaintiff cannot satisfy the first inquiry *Berkovitz* requires.

Because the pleadings do not establish binding, specific requirements governing the design and maintenance of the VA Hospital parking lot, Plaintiff has not met his burden under *Berkovitz* step one. For the discretionary function to apply, however, the conduct must satisfy both elements of the *Berkovitz* test. As to *Berkovitz*'s second step, the challenged decisions regarding the design and configuration of the parking facility are the type of discretionary judgments grounded in public policy — including budgeting, allocation of space, safety, and operational considerations — that the discretionary function exception is intended to protect. Therefore, this claim falls outside the Court's jurisdiction under the FTCA.

**B. Negligent Hiring, Training, Entrustment and Supervision (Count IV)**

Plaintiff alleges that the United States was negligent when it hired Mr. Collins without requiring him to provide proof of a safe driving record or participate in training sufficient to ensure he operated the van safely. **Compl. ¶¶ 38–40; 89–94.** Plaintiff argues that the United States was required to "pre-screen all employees that it allows to operate USA/VA vehicles to ensure that the driver furnishes proof of a good driving record and a valid driver's license." ***Id.* ¶ 90a.** Plaintiff also asserts the United States had an obligation to implement policies and procedures to ensure that drivers complete all required training, obey the relevant traffic laws, and report any vehicle-related infractions. ***Id.* ¶ 90b-d.** Last, Plaintiff alleges that the common law duty of prudent entrustment established a binding obligation on the United States to ensure those it entrusts to drive a vehicle will do so safely.

Plaintiff asserts VA Directive 0637 imposes a nondiscretionary requirement that the VA pre-screen employees to ensure they have a clean driving record and valid driver's license. VA Directive 0637 concerns the VA "Vehicle Fleet Management Program." The directive's stated

purpose is to "provide[] guidance to comply with Federal vehicle fleet mandates and achieve internal goals while meeting mission requirements." VA Directive 0637 at 4. Given this express statement of advisory purpose, Tenth Circuit precedent weighs against according VA Directive 0637 binding force. *See Aragon*, 146 F.3d at 824.

The cited excerpts of the Directive likewise do not establish a specific course of action governing the hiring, training, entrustment and supervision of Mr. Collins. Plaintiff cites the provision that "VA Fleet Vehicle Drivers shall . . . [f]urnish proof of a good driving record and valid driver's license, complet[e] all required training before operating any government vehicle, and inform[] the facility fleet manager of any vehicle-related court proceedings, liabilities, or accidents." Plaintiff observes that "shall" connotes imperative action. **Doc. 19 at 14;** VA Directive 0637 at 19. However, this directive places the burden of compliance on the employee. It does not impose a specific, mandatory directive on the agency to verify or collect the requisite proof. *Cf. Tolbert v. Gallup Indian Med. Ctr.*, 555 F. Supp. 3d 1133, 1171 (D.N.M. 2021) (finding that *Berkovitz*'s first step was satisfied where the regulations "require[d] specifically that the [agency] verify that its doctors possess valid licenses."). Thus, VA Directive 0637 does not create a binding obligation on the agency to police driver compliance.

Plaintiff cites the VA Directive's statement that "VA fleet managers *shall* 'establish and implement fleet management programs within their organization to ensure compliance' with the directive" and "shall 'maintain proof of completion of driver trainings for a period of three years." **Doc. 19 at 14**; VA Directive 0637 at 18. Although these directives employ mandatory language, the existence of some such verbiage does not eliminate discretion. *Hardscrabble Ranch*, 840 F.3d at 1222; *Knezovich*, 82 F.4th at 939–40; *Clark v. United States*, 695 F. App'x 378, 385–386 (10th Cir. 2017) ("A regulatory requirement's mere use of the imperative form of a verb does not take it

outside the exception."). Further, these directives concern the maintenance of internal administrative systems and recordkeeping requirements. They do not prescribe the agency's hiring, training, entrustment or supervision of Mr. Collins — the decisions ultimately challenged by Plaintiff. **Compl. ¶ 92**. The pleadings, therefore, do not permit a finding that VA Directive 0637 eliminates the agency's discretion to hire, train, entrust, and supervise its drivers.

Plaintiff also argues that the VA is bound by 5 C.F.R. Part 930, Subpart A, which "governs agencies in authorizing employees to operate Government-owned or -leased motor vehicles" and "establishes minimum procedures to ensure the safe and efficient operation of such vehicles." **Doc. 19**; *see* 5 C.F.R. § 930.101, § 930.103. Contained within this subpart, section 930.105 provides "[m]inimum requirements for competitive and excepted service positions" and states that "[a]n agency may fill motor vehicle operator positions in the competitive or excepted services by any of the methods normally authorized for filling positions" and specifies that "[a]pplicants for motor vehicle operator positions and incidental operators" must have a safe driving record, a valid State driver's license, pass a road test and demonstrate medical fitness to safely operate a motor vehicle. Plaintiff also alleges that section 930.114 of this subpart requires that "[a]gencies must adhere to State and local laws regarding [vehicle] safety."[4]

The United States disputes the regulations' application to the challenged conduct. The regulations define a "motor vehicle" as a "vehicle designed and operated principally for highway transportation of property or passengers" — a definition the United States argues does not encompass the vehicle that hit Major Gardner. **Doc. 21 at 8;** *see* 5 C.F.R. § 930.102. The United States submits a declaration alleging that the vehicle involved in the accident was "a non-plated

[4] The Court could not locate the cited language in 5 C.F.R. § 930.114 (2022). Nonetheless, the Court assumes that this directive is contained within an applicable regulation. Even so, Plaintiff does not demonstrate that a directive regarding compliance with vehicle safety laws controls the employment-related conduct alleged here.

vehicle that was not licensed for on-road use." **Doc. 21-1 at 1**. On a facial Rule 12(b)(1) challenge, as the United States lodges here, however, the Court accepts the complaint's factual allegations as true and does not resolve factual disputes bearing on jurisdiction. The Court therefore assumes, without deciding, that the regulations apply.

Even under that assumption, however, Plaintiff has not identified a mandatory directive depriving the VA of discretion in hiring, training, supervising and entrusting drivers. At most, the regulations establish minimum qualifications. They do not eliminate the VA's judgment regarding hiring, training, entrustment, and supervision of those employees who meet — or are determined to meet — those qualifications. In other words, the regulations do not dictate how the agency must assess an applicant's qualifications. Such decisions necessarily involve the exercise of judgment and discretion. *See Sydnes v. United States*, 523 F.3d 1179, 1183–84 (10th Cir. 2008) (Gorsuch, J.) ("[E]mployment decisions generally involve a significant degree of discretion[.]"); *Richman v. Straley*, 48 F.3d 1139, 1146 (10th Cir. 1995) ("Decisions regarding employment and termination are inherently discretionary . . . . Such sensitive decisions are precisely the types of administrative action the discretionary function exception seeks to shield from judicial second-guessing."). Accordingly, Plaintiff has not identified a mandatory directive that deprived the agency of discretion, and the claim fails to satisfy *Berkovitz*'s first step.

The common law duty of prudent entrustment likewise fails to prescribe a specific policy prescribing a course of action for the VA to follow. ***See*** **Doc. 1 ¶ 91**. The Tenth Circuit has explicitly rejected the argument that "mandatory common law duties" can prevent the application of the discretionary function exception, instructing that the two-part *Berkovitz* framework must still be applied. *Domme v. United States*, 61 F.3d 787, 789 (10th Cir. 1995). This common law duty does not correspond to a "federal statute, regulation, or policy specifically prescrib[ing]" that

the agency pursue a certain course of conduct. *Berkovitz*, 486 U.S. at 536. Therefore, this argument does not meet the threshold required under *Berkovitz* step one.

The actions of hiring, supervision, training and entrustment involve discretionary judgments regarding the employee's qualifications, the agency's needs and policy considerations—decisions "of the kind the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536. Here, the VA Hospital may have considered several factors in relation to Mr. Collins' hiring, supervision, training and entrustment, including his driving record, both overall and as related to his performance of his job duties and the agency's staffing needs. Because there is no binding regulation restricting the VA's discretion in hiring, supervising, training and entrusting Mr. Collins and those decisions involve discretionary policy decisions, this claim is barred by the exception.

**MOTION TO AMEND THE COMPLAINT [DOC. 36]**

Plaintiff moves to amend the Complain "to add more detail and clarity to the pleadings, including more detail regarding the Veterans Administration's nondiscretionary duties as reflected in federal regulations." **[Doc. 36]**. Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be freely granted when justice so requires. Nonetheless, a court may deny leave where amendment would be futile, meaning the proposed amendment would not withstand a motion to dismiss or otherwise fails to state a claim.

Plaintiff's Motion to Amend is interrelated with the United States' Partial Motion to Dismiss in that it seeks to alter the claims subject to dismissal under Rule 12(b)(1). The Court has reviewed the proposed amended allegations concerning Counts III and IV and concludes that the proposed amendments would not save those claims from dismissal because they do not avoid the discretionary function exception.

As to the claim for negligent parking lot design and maintenance, the proposed amended complaint includes additional citations to the PD Manual. ***See*** Doc. 36-1 at 5, first ¶ 32**.** However, as discussed above, the PD Manual does not eliminate the agency's discretion to consider various policies in designing and maintaining its parking lots. The proposed amendments also include additional citations to federal regulation 38 C.F.R. §§ 1.218(a)(12), 1.218(c), which Plaintiff alleges confers a nondiscretionary duty on the agency to ensure drivers on VA property drive carefully and safely and comply with traffic signs and any law enforcement signals or directions. *See* Doc. 36-1 at 6, second ¶ 32; ¶¶ 90, 92. Section 1.218 provides that "[t]he head of the facility is charged with the responsibility of the enforcement of these rules and regulations and shall cause these rules and regulations to be posted in a conspicuous place on the property." The regulation therefore apparently assigns enforcement responsibility to the head of the facility. The existence of that duty, however, does not alter the analysis. The cited regulation does not specify the measures the facility head must employ to accomplish that objective. Decisions regarding parking lot supervision and enforcement remain matters of agency judgment.

With respect to the claim for negligent hiring and supervision, Plaintiff seeks to add additional references to regulation and Directive 0637. Having reviewed the proposed amendments, the Court concludes that the additional allegations do not remove this claim from the discretionary function exception. Therefore, leave to amend on that basis is not warranted.

To the extent Plaintiff seeks to amend the allegations concerning the other counts in the Complaint — Counts I and II, which are not the subject of the United States' motion to dismiss — the Court grants leave to amend.

**ORDER**

IT IS ORDERED THAT the United States' Partial Motion to Dismiss Counts III and IV of

the Complaint for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), is GRANTED. The United States' Motion is also GRANTED as to its request to dismiss Plaintiff's claim for prejudgment interest as the FTCA bars the award of prejudgment interest, 28 U.S.C. § 2674.

IT IS FURTHER ORDERED that the Motion to Amend the Complaint is GRANTED as to Counts I and II of the Complaint and DENIED in all other respects.

**SO ORDERED.**

/s/
WILLIAM P. JOHNSON
SENIOR UNITED STATES DISTRICT JUDGE